# United States Court of Appeals
# For the Second Circuit

August Term 2024

Submitted: October 28, 2024
Decided: August 11, 2026

No. 23-7798

SHASHI MEHROTRA,

*Petitioner,*

*v.*

UNITED STATES DEPARTMENT OF LABOR,
GENERAL ELECTRIC COMPANY, GE POWER, GENERAL
ELECTRIC INTERNATIONAL, INC.,

*Respondents.*

On Petition for Review of the Final Decision
and Order of the United States Department of
Labor's Administrative Review Board, ARB
No. 2022-0060 (ARB Sep. 21, 2023).

Before:      SULLIVAN, PARK, and ROBINSON, *Circuit Judges.*

Petitioner Shashi Mehrotra seeks review of a September 21, 2023 final decision and order of the Administrative Review Board ("ARB") of the United States Department of Labor ("DOL"), affirming an administrative law judge's order ruling in favor of Mehrotra's former employer, the General Electric

Company ("GE"), on his whistleblower-retaliation claims under the Sarbanes–Oxley Act ("SOX" or the "Act"), 18 U.S.C. § 1514A. Upon review, we conclude that the ARB did not err in finding that the allegedly discriminatory acts Mehrotra complains of occurred outside the 180-day window allowed by SOX. And we see no basis for applying equitable tolling to Mehrotra's untimely claims. We therefore **DENY** the petition for review.

Judge Robinson concurs in part as to the outcome only and dissents in part in a separate opinion.

PETITION DENIED.

> Shashi Mehrotra, *pro se*, Niskayuna, NY.
>
> Simon D. Jacobs, Attorney; Seema Nanda, Solicitor of Labor; Jennifer S. Brand, Associate Solicitor; Sarah K. Marcus, Deputy Associate Solicitor; Megan E. Guenther, Counsel for Whistleblower Programs, *for* Julie Su, Acting Secretary of Labor, Washington, DC, *for Respondent* United States Department of Labor.
>
> David J. Rowland, Jules A. Levenson, Seyfarth Shaw LLP, Chicago, IL, *for Respondents* General Electric Company, GE Power, General Electric International, Inc.

RICHARD J. SULLIVAN, *Circuit Judge*:

Petitioner Shashi Mehrotra seeks review of a September 21, 2023 final decision and order of the Administrative Review Board ("ARB") of the United States Department of Labor ("DOL"), affirming an administrative law judge's order ruling in favor of Mehrotra's former employer, the General Electric

Company ("GE"), on his whistleblower-retaliation claims under the Sarbanes–Oxley Act ("SOX" or the "Act"), 18 U.S.C. § 1514A. Upon review, we conclude that the ARB did not err in finding that the allegedly discriminatory acts Mehrotra complains of occurred outside the 180-day window allowed by SOX. And we see no basis for applying equitable tolling to Mehrotra's untimely claims. We therefore **DENY** the petition for review.

## I.  BACKGROUND

In October 2018, Mehrotra, then a project manager at GE's Power division, filed two internal complaints regarding compliance concerns. On April 29, 2019, Mehrotra was informed that he was subject to a reduction in force (a "RIF") and that he would be laid off effective June 21, 2019. Mehrotra lodged an internal complaint with GE on June 20, 2019, alleging that his RIF selection was in retaliation for, among things, the fact that he previously raised compliance concerns; following investigation, GE determined that there was "no evidence" of retaliation and that his layoff was fair. J. Suppl. App'x at 142.

After his layoff on June 21, 2019, Mehrotra was retroactively placed on short-term disability leave through the end of 2019; he was then granted a further "protected service period" until June 30, 2020, during which time he was

3

permitted to apply for other positions at GE and, if rehired, could continue his employment without a break in service for purposes of his pension benefits. During that leave period, Mehrotra unsuccessfully applied for at least fifty open positions at GE, prompting him to file an internal complaint on March 16, 2020 because he had not been rehired. On June 23, 2020, after submitting "66 applications" without any offers, Mehrotra submitted another complaint with GE, this time specifically alleging that he had "been blacklisted as a snitch for reporting compliance violations." *Id.* at 152. GE again investigated Mehrotra's claims, reviewing the applications he had submitted over the prior year and obtaining more than seventy witness statements; ultimately, GE "found no evidence that Mehrotra's past compliance concerns played any role in the decision-making process for the jobs at issue." *Id.* at 146.

On December 17, 2020, Mehrotra filed his SOX whistleblower complaint with the Occupational Safety and Health Administration ("OSHA"), which is a part of the Department of Labor. *Id.* at 5–7. He alleged that on September 29, 2020, GE "black list[ed]" him from the company in retaliation for his reporting compliance violations; Mehrotra also alleged that GE terminated him, denied his benefits, failed to rehire him, harassed and intimidated him, failed to promote him,

4

and gave him a negative performance evaluation in retaliation for his whistleblowing. *Id.* at 5.

After OSHA dismissed his complaint in its entirety as untimely filed, Mehrotra sought review and a hearing before an administrative law judge ("ALJ") as to his blacklisting and termination claims. Following a hearing on the timeliness issue, the ALJ dismissed Mehrotra's claims, concluding that they were untimely and that equitable tolling of his filing deadline was not warranted. Mehrotra then appealed the ALJ's decision to the ARB, which affirmed the dismissal of Mehrotra's claims.

Mehrotra now seeks review of the ARB's decision in our Court, pursuant to 18 U.S.C. § 1514A(b)(2)(A) and 49 U.S.C. § 42121(b)(4)(A).

## II.   STANDARD OF REVIEW

We review the ARB's final decision and order regarding a SOX whistleblower-retaliation claim in accordance with the rules and procedures set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06. *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(4)(A). "We will uphold a decision by the ARB if it is not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Bechtel v. Admin. Rev. Bd.*, 710 F.3d 443, 445 (2d Cir.

5

2013) (quoting 5 U.S.C. § 706(2)(A)). And while we review *de novo* the ARB's legal conclusions, including its application of a statute of limitations, *see Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 229 (2d Cir. 2020), we must uphold the ARB's factual findings if they are supported "by substantial evidence," *Metro-N. Commuter R.R. Co. v. U.S. Dep't of Lab.*, 886 F.3d 97, 106 (2d Cir. 2018) (quoting 5 U.S.C. § 706(2)(E)). "The mere 'possibility of drawing two inconsistent conclusions from the evidence' does not render an agency's finding unsupported by substantial evidence." *Metro-N. Commuter R.R. Co.*, 886 F.3d at 106 (quoting *Am. Textile Mfrs. Inst. v. Donovan*, 452 U.S. 490, 523 (1981)).

### III.    DISCUSSION

Under SOX, an employee must file his whistleblower complaint with the Secretary of Labor "not later than 180 days after . . . the date on which the employee became aware of the violation." 18 U.S.C. § 1514A(b)(2)(D); *see* 29 CFR § 1980.103(d). Because Mehrotra filed his OSHA complaint on December 17, 2020, the alleged retaliatory acts – namely, (i) GE's termination of Mehrotra's employment and (ii) its subsequent refusal to rehire him – must have occurred on or after June 20, 2020. They did not.

6

The ARB properly concluded that Mehrotra's wrongful-termination claim accrued on April 29, 2019, the date on which he received written notice from GE of his imminent layoff. "[A]n ordinary wrongful-discharge claim accrues – and the limitations period begins to run – when the employer notifies the employee he is fired, not on the last day of his employment." *Green v. Brennan*, 578 U.S. 547, 564 (2016) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258–59 (1980)); *see also Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2010) (explaining, in the SOX context, that petitioner's "claim similarly accrued, and the statute of limitations began to run, when she learned of the actual injury, *i.e.*, that [her employer] had decided to terminate her employment"). Thus, as the ARB correctly noted, "the time for filing a complaint begins when the employee knew or should have known of the adverse action, regardless of the effective date." J. Suppl. App'x at 501 (internal quotation marks omitted); *see Chardon v. Fernandez*, 454 U.S. 6, 8 (1981). And while Mehrotra contends, as a factual matter, that his effective termination date was June 30, 2020 (the date his protected-services period ended) and not June 21, 2019 (his layoff date and the day he stopped working), he does not meaningfully dispute that he received notice of his layoff on April 29, 2019. As a result, Mehrotra was obliged

7

to bring his wrongful-termination claim 180 days later – that is, by October 26, 2019 – making his December 17, 2020 OSHA complaint plainly untimely.

Mehrotra's retaliatory refusal-to-rehire claim fares no better. As the ARB correctly explained, where the alleged adverse action is a blacklisting or company-wide refusal to rehire, an employee is unlikely to receive definitive and unequivocal notice of the adverse action taken against him. In such cases, the claim accrues when it "was apparent or should have been apparent that a complainant's former employer was refusing to rehire [him]." J. Suppl. App'x at 502–03; *see, e.g.*, *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) ("Under federal law, . . . a claim generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action." (internal quotation marks omitted)); *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (analyzing, in employment-discrimination context, "when [plaintiff] knew or had reason to know of the injury serving as the basis for his claim"). Based on the record before them, the ALJ and ARB properly concluded that Mehrotra knew or should have known of GE's refusal to rehire him by March 16, 2020 – the date on which he filed an internal complaint with GE after unsuccessfully applying to fifty open positions.

8

This reading of section 1514A(b)(2)(D) aligns with the Supreme Court's interpretations of analogous statute-of-limitations provisions in SOX. For example, in *Merck & Co. v. Reynolds*, the Supreme Court interpreted SOX's fraud-based statute-of-limitations provision, found in 28 U.S.C. § 1658(b), to mean "that a cause of action accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff *would have discovered*, 'the facts constituting the violation' – whichever comes first." 559 U.S. 633, 637–38 (2010) (emphasis added) (quoting 28 U.S.C. § 1658(b)(1)). Significantly, the text of the statute-of-limitations provision at issue in *Merck* substantively mirrors the provision we are being asked to interpret. *Compare* 28 U.S.C. § 1658(b) (statute of limitations expires "2 years after *the discovery* of the facts constituting the violation" (emphasis added)), *with* 18 U.S.C. § 1514A(b)(2)(D) (statute of limitations expires "not later than 180 days after the date on which the violation occurs, or after the date on which the employee *became aware* of the violation" (emphasis added)).

Mehrotra – and our dissenting colleague – disagree, arguing that GE's failures to hire him for four positions after June 20, 2020 constituted discrete retaliatory acts that occurred within the statutory period. In doing so, they rely principally on language from the Supreme Court's decision in *National Railroad*

9

*Passenger Corp. v. Morgan*, which treated an employer's "refusal to hire" as a "discrete act[]" and stated that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. 101, 113–14 (2002); *see also* Conc. & Diss. Op. at 11–13. But as we have since explained, *Morgan* does not displace the rule announced in *Ricks* that "a 'delayed, but inevitable, consequence of the'" discriminatory or retaliatory action is insufficient to revive an otherwise untimely claim. *Alleyne v. Am. Airlines, Inc.*, 548 F.3d 219, 221 (2d Cir. 2008) (quoting *Ricks*, 449 U.S. at 257–58). As a result, Mehrotra may not pin his claim on refusals to rehire "that fell within the limitations period to pull in the time-barred discriminatory act" of blacklisting. *Morgan*, 536 U.S. at 113 (discussing *Ricks*, 449 U.S. at 257).

Mehrotra attempts to sidestep this result by arguing that his blacklisting falls under "the continuing[-]violation doctrine." Mehrotra Br. at 21–23; *see also Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022) ("The continuing[-]violation doctrine, where applicable, provides an exception to the normal knew-or-should-have-known accrual date." (internal quotation marks omitted)); *see also Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (The doctrine "applies to claims composed of a series of separate acts that collectively constitute one unlawful practice."

10

(alteration adopted and internal quotation marks omitted)).  But the *Morgan* "Court unanimously rejected the . . . view that a series or pattern of related discrete acts could constitute one continuous unlawful employment practice for purposes of the statute of limitations."  *Tassy*, 51 F.4th at 532 (internal quotation marks omitted).  Indeed, we have cabined the doctrine "*exclusively* 'to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment.'"  *Id.* (emphasis added) (quoting *Lucente v. County of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020)).

Blacklisting is no such claim. [1]  *See Lucente*, 980 F.3d at 309 (continuing-violation doctrine does not apply "to discrete unlawful acts, *even where* those discrete acts are part of 'serial violations'" (emphasis added) (quoting *Morgan*, 536

---

[1] The dissent contends that "blacklisting" only occurs when an employer "'publishes'" (or otherwise "'communicate[s]'") to "*another employer*" the negative information about the employee "for the purpose of preventing [the backlisted employee] from getting a job" somewhere else. Conc. & Diss. Op. at 3 (first quoting Ct. Gen. Stat. § 31-51; and then quoting Az. Rev. Stat. § 23-1361(A)); *see also id.* (maintaining that Mehrotra's "factual allegations do not describe blacklisting as that term is generally understood in the law").  But Black's Law Dictionary defines "to blacklist" as an 18th-century verb that means:  "To put the name of (a person) on a list of those who are disfavored and are therefore to be avoided or punished <the firm blacklisted the former employee>."  *To Blacklist,* Black's Law Dictionary 209 (11th ed. 2019).  The dissent points to no evidence that the ALJ or the ARB understood "blacklisting" as anything other than precisely the definition that Black's puts forward. *See* App'x at 395 (ALJ understanding Mehrotra to have been on notice that he was blacklisted after he was "denied employment after 50 attempts *with the same employer*" (emphasis added)); *id.* at 498 (ARB understanding Mehrotra's allegation to be "that his job was terminated and he was blacklisted *from rehire by GE* due to his protected activity" (emphasis added)).

11

U.S. at 114–15)).  To hold otherwise would permit an employee to revive a stale blacklisting claim simply by filing a new job application, even though he was on notice of the employer's retaliation for well over 180 days.  Such a rule would make the 180-day limitation meaningless and encourage employees, as well as OSHA, to delay "resolv[ing] the controversy on its merits."  *See Daly v. Citigroup Inc.*, 939 F.3d 415, 428 n.14 (2d Cir. 2019) (internal quotation marks omitted).

Mehrotra also asserts that the ARB failed to consider two additional discrete violations of the Act after June 20, 2020 – namely, that GE engaged in a "sham investigation of his blacklisting complaint" and "block[ed]" his complaint from reaching GE's board of directors.  Mehrotra Br. at 10.  But, as Mehrotra's own brief suggests, these actions were not independently retaliatory but instead part-and-parcel of GE's alleged blacklisting more broadly.  *See id.* at 18 (describing "[GE Corporate's alleged] active involvement in blacklisting, fraud, fabricating pretextual reasons for refusal to rehire, and depriving [Mehrotra of] whistleblower protection under the scrutiny of independent directors"); *see also Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992) ("The fact that [an entity] . . . undertook an internal administrative review of its allegedly discriminatory decision has no effect on when the statute of limitations period begins to run.").  Accordingly, we

12

do not agree that these allegations restarted the statute of limitations for Mehrotra's refusal-to-rehire claim.

Nor are we persuaded by Mehrotra's assertion that he did not know of GE's retaliatory non-hiring until late June 2020, when he discovered that several of his applications had been rejected at the initial screening stage and concluded that it was the result of "blacklisting." Under the applicable substantial-evidence standard, our review is limited to "whether a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion." *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (internal quotation marks omitted); *Metro-N. Commuter R.R. Co.*, 886 F.3d at 106 ("The mere possibility of drawing two inconsistent conclusions from the evidence does not render an agency's finding unsupported by substantial evidence." (internal quotation marks omitted)).

The ALJ and ARB's finding that Mehrotra was (or should have been) on notice that GE was refusing to rehire him by March 16, 2020 more than satisfies this standard. By that time, Mehrotra had unsuccessfully applied to at least fifty open positions at GE, many of which he believed he was well-qualified for; more importantly, after applying to a dozen more jobs, he followed-up by also filing an internal complaint with GE regarding the company's failure to rehire him, which

13

he attributed to the fact that he was a whistleblower. J. Suppl. App'x at 144, 375; Sp. App'x at 63–64. This months-long failure to obtain re-employment with GE, moreover, occurred after Mehrotra had previously complained in June 2019 that his *initial* layoff had been retaliatory. J. Suppl. App'x at 140–42. As a result, even if it could be argued that Mehrotra's position "is not without some support in the record, that is insufficient to overturn the agency's conclusion under our deferential standard of review." *Unified Turbines, Inc. v. U.S. Dep't of Lab.*, 581 F. App'x 16, 19 (2d Cir. 2014) (citing *Bechtel*, 710 F.3d at 446). We thus see no reason to disturb the DOL's finding that Mehrotra knew or should have known about GE's alleged refusal to rehire him before June 20, 2020. *See Bechtel*, 710 F.3d at 450.

Finally, Mehrotra argues that he was entitled to "equitable relief" from the limitations period because GE "fraudulently concealed [the] facts of discrimination from him on multiple occasions." Mehrotra Br. at 25. As an initial matter, Mehrotra seems to conflate the related-but-distinct concepts of "equitable estoppel" and "equitable tolling." As the ARB correctly noted, equitable *estoppel* applies when a respondent "prevents 'a complainant from suing in time by, for example, promising not to plead the limitations defense or by presenting fabricated evidence to negate any basis for a claim.'" Sp. App'x at 66 (quoting

14

*Martin v. Paragon Foods*, ARB No. 2022-0058, 2023 WL 4560920, at *4 (Admin. Rev. Bd. June 8, 2023)). By contrast, equitable tolling applies when "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014) (internal quotation marks omitted). In a nutshell, equitable tolling "is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, [while] equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's [misrepresentations] caused him to delay in bringing his lawsuit." *Id.* at 802 (internal quotation marks omitted).

But whether Mehrotra intended to invoke the doctrine of equitable estoppel or the doctrine of equitable tolling (or both), we see no abuse of discretion in the ARB's conclusion that Mehrotra "failed to establish any situation that would warrant an extension of the filing deadline" for his claims. J. Suppl. App'x at 507; *see Ahmed v. Holder*, 624 F.3d 150, 155 (2d Cir. 2010) (reviewing agency's denial of

15

equitable-estoppel claim for abuse of discretion); *Xanthopoulos v. United States Dep't of Lab.*, 991 F.3d 823, 831 (7th Cir. 2021) (same, with respect to ARB's denial of equitable tolling).  As noted above, substantial evidence supports the ARB's finding that – well before June 20, 2020 – Mehrotra knew of his termination, was on notice of GE's refusal to rehire him, and had reason to believe that retaliation for his whistleblowing activity was the reason behind both.  Because Mehrotra knew the operative facts necessary to bring his claims and has not meaningfully explained how any conduct by GE improperly prevented him from doing so in a timely manner, we cannot say that the ARB erred in rejecting his claim.  *See Ellul*, 774 F.3d at 801–02.

Mehrotra primarily contends that GE fraudulently concealed the material facts of its retaliation (particularly its refusal to rehire him) and that he first learned of that scheme in February 2021 during OSHA's investigation of his whistleblower complaint.  But Mehrotra's own OSHA complaint – filed in December 2020 – undercuts his assertion that he lacked sufficient information to bring his claims until February 2021.  That Mehrotra may have later learned additional details regarding the particulars of how or why GE was refusing to rehire him – *i.e.*, facts that "would enhance [his] ability to prevail as to [his] cause of action" – is of no

moment, since "the *existence* of [his] cause of action" was already known to him and therefore not "fraudulent[ly] conceal[ed]." *Pearl v. City of Long Beach*, 296 F.3d 76, 84 (2d Cir. 2002) (emphasis added).  Nor does he identify any facts to suggest that GE made misrepresentations that "caused him to delay in bringing his lawsuit," *Ellul*, 774 F.3d at 802 (internal quotation marks omitted), either by "promising not to plead the limitations defense or by presenting fabricated evidence to negate any basis for a claim."  Sp. App'x at 66 (internal quotation marks omitted).  For these reasons, the ARB did not abuse its discretion in declining to equitably suspend the limitations period.

## IV.  CONCLUSION

Accordingly, for the reasons stated above, we **DENY** the petition for review.

17

No. 23-7798
*Mehrotra v. U.S. Dep't of Lab.*

BETH ROBINSON, *Circuit Judge*, concurring in part as to the outcome only, dissenting in part. Mehrotra alleges that after he engaged in protected whistleblower activity, GE retaliated by 1) terminating his employment and, 2) during his protected service period, declining to rehire him for dozens of other open positions for which he applied and was qualified. He attributes GE's decisions to not rehire him for the various other positions he sought to GE's internal dissemination of untruthful, derogatory information about him to hiring managers. He had no knowledge of this conduct at the time. He colloquially describes this as a "scheme to blacklist" him. J. Suppl. App'x at 11.

In challenging OSHA's dismissal of his claims as untimely, Mehrotra specifically argued to the Administrative Law Judge ("ALJ"), with supporting undisputed evidence, that based on a retaliatory motive GE declined to rehire him on four occasions within the limitations period. Nevertheless, the ALJ—and, in turn the Administrative Review Board ("ARB"), like the majority here—proceeded as if Mehrotra's cause of action for post-termination adverse actions arose solely from GE's uncommunicated intent not to rehire him and concluded that his claims were untimely because he should have divined that intent sooner.

1

This approach ignores the record—which does not support the suggestion that Mehrotra alleges a single "blacklisting" decision not to rehire him for any position. And it flies in the face of the applicable law. A cause of action for retaliation requires an adverse action and accrues when the employee learns of it, and successive refusals to rehire are discrete events. For these reasons, I respectfully dissent from the majority's conclusion that all of Mehrotra's failure-to-rehire claims are time-barred.[1]

## I.  The majority's approach ignores the record.

First, the record. True, Mehrotra's OSHA complaint includes "black listing" in the list of alleged adverse employment actions. J. Suppl. App'x at 5. But it also

---

[1] I concur in the majority's conclusion that Mehrotra's claim for retaliatory termination is time-barred, but I reject the majority's reasoning. The majority asserts that a cause of action for wrongful termination under the Sarbanes-Oxley anti-retaliation statute accrues when the employee "knew or should have known of the adverse action." Maj. Op. at 7. That's flatly counter to the standard set forth in the SOX statute which, as set forth more fully below, provides that an action alleging retaliatory discharge or other discrimination "shall be commenced not later than 180 days after the date on which the violation occurs, or after the date on which the employee *became aware* of the violation." 18 U.S.C. § 1514A(b)(2)(D) (emphasis added). Absent binding precedent instructing us otherwise, the plain language of the statute governs. *See, e.g.*, *Feliciano v. Dep't of Transportation*, 605 U.S. 38, 45 (2025) ("[T]hose whose lives are governed by law are entitled to rely on its ordinary meaning, not left to speculate about hidden messages."). The majority's reliance on *Merck & Co. v. Reynolds* to support its broader reading of § 1514A(b)(2)(D) is unpersuasive for the reasons set forth below. *See* below, at pages 9–11. The majority's misstatement of the standard does not change the outcome of its analysis concerning the timeliness of Mehrotra's complaint regarding his termination, with which I concur. I likewise concur in the result insofar as Mehrotra is barred from pursuing claims for retaliatory non-rehiring arising from job applications rejected before June 20, 2020.

2

lists "Failure to Hire/Re-Hire" among the allegedly discriminatory adverse actions—a claim the agency essentially ignored in reducing his post-termination retaliation claims to a single purported act of blacklisting.

Moreover, though he colloquially describes GE's actions as "black listing," his factual allegations do not describe blacklisting as that term is generally understood in the law. Mehrotra does not allege that GE communicated with *another employer* for the purpose of preventing him from getting a job. *Cf.* Ct. Gen. Stat. § 31-51 (employer who "blacklists any employee . . . or publishes or causes to be published the name of any such employee . . . with the intent and for the purpose of preventing such employee . . . from engaging in or securing employment *from any other person . . .* " is subject to fine) (emphasis added); Az. Rev. Stat. § 23-1361(A) (" 'Blacklist' means any understanding or agreement whereby the names of any person or persons . . . shall be spoken, written, printed or implied for the purpose of being communicated . . . between two or more employers . . . whereby the laborer is prevented or prohibited from engaging in a useful occupation.") (emphasis added); *Burba v. Rochester Gas and Elec. Corp.*, 90 A.D.2d 984, 984 (4th Dept. 1982)[2] (describing as "blacklist" published company

---

[2] In quotations from caselaw, this dissent omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

3

memorandum prohibiting plaintiffs' employment on defendant's property "by defendant *or any other individual*" that induced contractors to decline employment to the plaintiffs (emphasis added)).

Nor does he even suggest a single, uncommunicated company-wide decision to disqualify Mehrotra from GE employment. Rather, Mehrotra alleges that, with retaliatory animus, the GE human resources department conveyed inaccurate, disparaging information about him to hiring managers, resulting in their respective decisions to pass him over. Rather than a single corporate decision not to rehire him, Mehrotra alleges conduct by individuals with retaliatory motives that resulted in multiple no-hire decisions by various hiring managers. *Cf. Vasquez v. Empress Ambulance Service, Inc.*, 835 F.3d 267, 274–75 (2d Cir. 2016) (concluding in Title VII case that employer was liable for adverse employment decision resulting from false allegations by employer's agent that were motivated by impermissible retaliatory animus).[3]

---

[3] To the extent that the majority suggests that this dissent limits the concept of blacklisting to inter-employer communications, it ignores this discussion. Maj. Op. at 11 n.1. What's missing here is an allegation of a definitive determination not to rehire Mehrotra under any circumstances. At most, the allegations here posit dissemination of disparaging information that led various hiring decisionmakers to decline to rehire Mehrotra.

## II. The majority misapplies the law—three times.

*A. An unexpressed intent not to rehire is not an adverse action.*

Putting aside the record, even if Mehrotra had alleged that GE had made a single, determinate, uncommunicated retaliatory corporate decision to decline to rehire him, the agency's legal analysis, adopted by the majority here, fails at several junctures. First, the agency proceeds on the premise that such an uncommunicated decision, in and of itself, constitutes a cause of action for retaliation under the Sarbanes-Oxley Act ("SOX") without regard to whether Mehrotra actually applied for other positions following his layoff.

But SOX provides a remedy for materially adverse employment actions. *See* 18 U.S.C. § 1514A(a) (providing that a covered employer may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee *in the terms and conditions of employment*" because of the employee's protected activity (emphasis added)); *see also id.* § 1514A(b)(2) (incorporating by reference rules and procedures set forth in 49 U.S.C. § 42121(b)); 49 U.S.C. § 42121(b)(2)(B)(i), (ii) (describing shifting burden of proof with respect to whether protected activity was a contributing factor in "the unfavorable personnel action").

A retaliatory, uncommunicated, and unexercised intent not to rehire someone is a proverbial tree falling in the woods: nobody hears it. Evidence of

5

such an intent may establish the retaliatory *motive* for a refusal to hire, but where that intent has not been communicated to the employee, some *action*, such as passing over the employee in response to an actual application for a position, is an essential element of a cause of action for retaliation under SOX. Until the uncommunicated and unexercised intent leads to an actual adverse action, no cause of action arises under SOX, and no limitations clock starts ticking.

### B. *The court applies the wrong accrual standard to its hypothetical blacklisting claim.*

That leads to the second legal problem here. Having conjured a freestanding cause of action for "blacklisting" that does not exist on these facts, the agency ignores the express terms of the SOX statute in determining when that mythical claim *accrues* for purposes of the 180-day time limit. The statute leaves no doubt as to when the clock starts ticking: "An action [alleging retaliatory discharge or other discrimination] shall be commenced not later than 180 days after the date on which the violation occurs, or after the date on which *the employee became aware* of the violation." 18 U.S.C. § 1514A(b)(2)(D) (emphasis added). The ARB cites this statute but then asserts that "where no such notice was given, the appropriate question for when the blacklisting for rehire claim accrues is when it was apparent or should have been apparent that a complainant's former employer

6

was refusing to rehire them." J. Suppl. App'x 502–03. But that's not what the statute says. It specifically requires that the employee "became aware" of the violation, § 1514A(b)(2)(D), and decidedly does *not* suggest that for purposes of the limitations period the cause of action may accrue when the employee *should have* become aware.[4]

The majority adopts the agency's approach, likewise departing from the plain language of the statute. In doing so, the majority ignores the SOX statute at issue here and instead relies on inapposite decisions involving claims under Title VII, 42 U.S.C. § 1983, and securities fraud under 28 U.S.C. § 1658(b). Those decisions are inapposite for a number of reasons.

"Within each body of law, there are different accrual rules depending on the nature of the cause of action." *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 87 (2d Cir. 2024). None of the decisions relied upon by the majority arises in the context of a statute like § 1514A(b)(2)(D).

In contrast to § 1514A(b)(2)(D), some of the decisions the majority cites apply statutes that don't purport to address the date of accrual when a plaintiff is

---

[4] The ARB's approach is inconsistent with at least some of its own caselaw on this point. *See, e.g.*, *Johnsen v. Houston NANA, Inc.*, ARB 2000-0064, ALJ No. 1999-TSC-00004, slip op. at 2, 5-6 (ARB Jan. 27, 2003) (reissued Feb. 10, 2003) (claim arising from no-hire notice accrues from date of plaintiff's receipt of "definitive, final and unequivocal" notice).

7

unaware of an adverse action. Specifically, § 1983 does not address the accrual of § 1983 claims, and 42 U.S.C. § 2000e-5(e)(1) provides only that accrual begins when the "alleged unlawful employment practice occurred." In the cases cited by the majority that involve these civil rights statutes, in the face of statutory silence on the issue, this Court applied the general discovery rule when the adverse action was unknown to the plaintiff. *See, e.g.*, *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) ("Under federal law, which governs the accrual of claims brought under §§ 1983 and 1985, . . . a claim generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of [the] action."); *Harris v. City of New York*, 186 F.3d 243, 247, 251 (2d Cir. 1999) (adopting same standard for Americans with Disabilities Act and Title VII claims). Where plaintiffs face "problems in discerning the fact and cause of their injuries," this "more liberal accrual standard" governs. *Barrett v. United States*, 689 F.2d 324, 327, 333 (2d Cir. 1982) (adopting rule for Federal Tort Claims Act and § 1983 claims); *see also Saint-Jean v. Emigrant Mortgage Co.*, 129 F.4th 124, 141, 141 n.6 (2d Cir. 2025) (discussing the relationship between this accrual rule and equitable tolling in context of Fair Housing Act claims). In the absence of statutory guidance or any Congressional

8

correction of these long-standing interpretations, courts continue to apply and develop this knew-or-should-have-known accrual standard.

But in the provision of SOX at issue here, Congress *did* address the matter, specifying that a claim accrued when the employee actually "became aware" of the violation. 18 U.S.C. § 1514A(b)(2)(D). Judge-made rules under analogous statutes that are silent on the matter cannot supplant the unequivocal terms of the applicable statute here. Rather, "If the statutory terms are unambiguous, our review generally ends and the statute is construed according to the plain meaning of its words." *Tyler v. Douglas*, 280 F.3d 116, 122 (2d Cir. 2001). Moreover, in the context of Title VII and § 1983 claims, the knew-or-should-have-known standard effectively *extends* the statutory limitations period in situations in which an individual cannot reasonably ascertain the statutory injury; but applying the standard in the context of these SOX claims would actually *shorten* the applicable limitations period relative to the statutory prescription.

The decision the majority identifies as more squarely on point likewise applies an inapposite statute. *See Merck & Co. v. Reynolds*, 559 U.S. 633 (2010). The majority's reliance on the *Merck* decision is unpersuasive because the statute of limitations the Court applied in that case expressly references "the discovery" of

9

the facts constituting the violation. *Id.* at 644; *see also* 28 U.S.C. § 1658(b)(1) (providing that a private right of action for certain claims relating to securities fraud may be brought not later than the earlier of "2 years after the discovery of the facts constituting the violation" or 5 years).

The Court acknowledged that "one might read the statutory words 'after the discovery of the facts constituting the violation' as referring to the time a plaintiff *actually* discovered the relevant facts." *Id. at 644.* However, the Court recognized that "in the statute of limitations context, the word 'discovery' is often used as a term of art in connection with the 'discovery rule,' a doctrine that delays accrual of a cause of action until the plaintiff has 'discovered' it." *Id.* The Court explained that as a term of art, the "discovery rule" encompasses "not only . . . actual discovery, but also . . . the hypothetical discovery of facts a reasonably diligent plaintiff would know." *Id.* at 645.

By contrast, the language of the statute at issue *here*—which starts the limitations clock on the date the employee "became aware" of the violation—does *not* use the term "discovery" or otherwise imply incorporation of the well-established discovery rule. 18 U.S.C. § 1514A(b)(2)(D). The Supreme Court's rationale for reading the statute at issue in *Merck* to start the clock when a diligent

10

plaintiff "should have" discovered the violation simply doesn't apply to § 1514A(b)(2)(D). There is no reason to infer that "became aware" in § 1514A(b)(2)(D) means anything other than "became aware."

### C. *Adverse acts within the limitations period are not barred.*

Finally, wholly apart from any claim for what Mehrotra colloquially described as "blacklisting,"[5] Mehrotra specifically based his SOX complaint on GE's repeated failures to rehire him—including four within the limitations period. Despite Mehrotra's repeated arguments that these four failures to rehire him violated SOX, the agency considered these failures only as incidental to the legally non-existent blacklisting claim, and it thus concluded that the time-bar on the blacklisting claim precluded Mehrotra from pursuing relief for any of the allegedly retaliatory failures to rehire.

But under well-established analogous law under other employment discrimination statutes, each allegedly retaliatory decision not to rehire Mehrotra

---

[5] The ALJ, the ARB, and the majority put undue emphasis on Mehrotra's uncounseled description of the nature of his claims in his SOX complaint and arguments before the agency. Despite his use of the inapt term "blacklist," Mehrotra plainly argued to the ALJ that his employer retaliated against him by declining to rehire him on multiple distinct occasions. *See* J. Suppl. App'x at 11 ("At least four Job denials are adverse actions within the limitations period"). Moreover, after his initial complaint to OSHA, Mehrotra was and is uncounseled. We should interpret his filings "to raise the strongest claims they suggest." *Sharikov v. Philips Medical Systems MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024).

11

was a discrete act triggering its own limitations calculation. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). In *Morgan*, a Title VII decision, the Supreme Court distinguished between employment discrimination actions based on discrete acts, such as failing or refusing to hire an individual, *id.* at 110–11, and claims based on a hostile work environment, *id.* at 115. The Court identified "refusal to hire" as an "easy to identify" discrete act. *Id.* at 114. And it explained that each such refusal to hire "constitutes a separate actionable unlawful employment practice" that "starts a new clock for filing charges alleging that act." *Id.* at 113, 114.

That's true even if an employee's timely claims for discrete adverse acts follow an established pattern of such conduct. The *Morgan* Court explained that the "existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Id.* at 113.

This authority under Title VII is persuasive here where, in contrast to the accrual issue discussed above, the relevant text of the respective statutes is essentially the same as the SOX statute. In *Morgan*, the Supreme Court relied

12

heavily on the language of Title VII requiring that a charge be filed within 180 days "after the alleged unlawful employment practice" occurred. *Id.* at 109. The statute here provides that the claim must be commenced not later than 180 days "after the date on which *the violation* occurs, or after the date on which the employee became aware of the violation." 18 U.S.C. § 1514A(b)(2)(D) (emphasis added). The Court's reasoning in *Morgan* regarding the accrual of discrete violations thus applies as well in this SOX case. Thus, here, though Mehrotra's non-hire decisions may all be "related discrete acts," each individual non-hire decision is independently motivated by retaliatory animus, so his claims arising from GE's post-June 20, 2020, decisions not to hire him are not time-barred.

The majority resists this conclusion and suggests that the rule established by the Supreme Court in *Morgan* gives way in this case to a very different principle embraced by the Supreme Court in *Delaware State College v. Ricks*, 449 U.S. 250 (1980)—a decision that preceded *Morgan* by two decades and involved very different circumstances. In *Ricks*, a Delaware State College tenure-track employee alleged that he was denied tenure on grounds violative of Title VII and 42 U.S.C. § 1981. During the course of the internal grievance proceeding challenging Ricks' denial of tenure, the College had informed him that he would be offered a one-

year "terminal contract" to teach one additional year. 449 U.S. at 253. The College made this offer pursuant to its established policy of not immediately discharging junior faculty members who do not receive tenure.

The district court dismissed Ricks' claims on the basis that the only unlawful employment practice alleged—the College's decision to deny Ricks tenure—occurred more than 180 days before he filed his EEOC complaint and more than three years before he filed his action asserting § 1981 violations. *Id.* at 255. The Court of Appeals reversed, concluding that the Title VII requirement and the statute of limitations for the § 1981 claim did not commence until Ricks' "terminal contract" had expired—an event that occurred within the relevant limitations and filing periods. *Id.* The Supreme Court reversed, explaining that "the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks." *Id.* at 258. That was so "even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later." *Id.*

*Ricks* is inapposite. There is no "delayed, but inevitable, consequence" to any decision that was "made and communicated" to Mehrotra. *Id.* at 257–58. The

14

only decisions communicated to him were each of the independently actionable non-hire decisions, which had no delayed effect.

Here, as in *Morgan*, Mehrotra alleged multiple distinct retaliatory adverse actions, including several that are not time-barred under SOX. The notion that the invented "blacklisting" cause of action subsumes all his claims arising from discrete adverse actions, rendering them untimely *even if* the adverse actions took place within the limitations period, flies in the face of the Supreme Court's holding in *Morgan*. Just as characterizing a series of discrete adverse acts as a pattern or practice cannot pull *forward* otherwise untimely discrete-act claims to render claims based on those acts timely, characterizing a series of discrete adverse acts as a pattern or practice—i.e., "blacklisting"—does not pull otherwise timely discrete-act claims *backward* to render claims based on those acts untimely.

In sum, Mehrotra's SOX complaint was timely with respect to the four discrete adverse acts that occurred after June 20, 2020—GE's alleged retaliatory refusal to rehire him to positions for which he alleges he was qualified. For that reason, I respectfully dissent.